UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Before The Honorable JON S. TIGAR, Judge**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | NO. CR-19-0491 JST |
| | ) | |
| VS. | ) | Friday, June 26, 2020 |
| | ) | |
| James Heyward Silcox III, | ) | Oakland, California |
| | ) | |
| | ) | Change of Plea |
| Defendant. | ) | |
| _____ | ) | |

<u>**REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

For Plaintiff:　　　　　　DAVID L. ANDERSON, Esquire
　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　150 Almaden Blvd., Suite 900
　　　　　　　　　　　　San Jose, California　95113
　　　　　　　　BY:　**Sarah Griswold,**
　　　　　　　　　　**Assistant United States Attorney**


For Defendant:　　　　　**Michael W. Levinsohn, Esquire**
　　　　　　　　　　　　1370 Trancas Street, Suite 900
　　　　　　　　　　　　Napa, California 94558




Reported By:　　　　　　Diane E. Skillman, CSR 4909, RPR, FCRR
　　　　　　　　　　　　Official Court Reporter

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| Friday, June 26, 2020 | 10:09 a.m. |

P R O C E E D I N G S

o0o

**THE CLERK:**  Your Honor, there's feedback.

(Pause in the proceedings.)

**THE COURT:**  May I ask, anybody who is not speaking to mute his or her microphone please.

**THE CLERK:**  Okay.  Your Honor, now calling -- Nope.

(Pause in the proceedings.)

**THE CLERK:**  Is that better?

Your Honor, now calling Criminal matter 19-491 United States of America V. James Heyward Silcox.

If counsel could please state their appearances for the record starting with the Government.

**MS. GRISWOLD:**  Good morning, Your Honor.  Sarah Griswold for the United States.

**MR. LEVINSOHN:**  Good morning, Your Honor.

**THE CLERK:**  Mr. Levinsohn, one moment.  Could you unmute and repeat yourself?

**MR. LEVINSOHN:**  Good morning, Your Honor.  My name is Michael Levinsohn and I represent Mr. Silcox.

**THE COURT:**  Very good.  Good morning everybody.

The matter is on calendar for a change of plea.  I understand in just a little while Mr. Silcox will be entering a plea without the benefit of a plea agreement.  So we will

1    get to that in just a moment.

2        I wanted to start by acknowledging how unusual the

3    proceedings are.  Everybody is wearing a mask.  We are

4    proceeding in a hybrid fashion.  So some persons are appearing

5    by video and some persons are here live in court.  That makes

6    these proceedings, I think, more intimidating and more formal

7    than they would otherwise be.  I'm sorry about that.  I wish

8    there was a way around it.

9        I see there's some people here in the audience.  I welcome

10   you.  I wish we could have more people in this room at one

11   time.  The public health considerations prevent me from doing

12   that.  And, again, I wish we were able to run things the way

13   we used to, but for now this is really the best we can do.

14       Mr. Silcox, can you hear me okay?

15           **THE DEFENDANT:**  Yes, your honor.

16           **THE COURT:**  Very good.  If at any time you cannot

17   hear me or you can't hear somebody else, whether they are --

18   actually, all the people on the screen are here in the

19   courtroom.  But if you can't hear anybody or you can't

20   understand them, either because you didn't hear what they said

21   clearly or you understood what they -- you are able to hear

22   them clearly but you didn't understand the words they used,

23   would you please let me know that?

24           **THE DEFENDANT:**  Yes, Your Honor.

25           **THE COURT:**  And, Mr. Levinsohn, have you and

1    Mr. Silcox had a sufficient opportunity to talk this morning

2    so that you can be confident that you are both ready to

3    proceed?

4            **MR. LEVINSOHN:**  Yes, Your Honor.

5            **THE COURT:**  All right.  Very good.  All right.  Then

6    we will get going.

7        Mr. Levinsohn, is it still the case that Mr. Silcox wishes

8    to change his plea this morning?

9            **MR. LEVINSOHN:**  Yes, Your Honor.

10           **THE COURT:**  Ms. Lee, would you administer an oath to

11   Mr. Silcox, please?

12           **THE CLERK:**  Yes, sir.

13       I guess I shouldn't stand.  Sorry.

14                        (Defendant sworn.)

15           **THE DEFENDANT:**  I do.

16           **THE CLERK:**  Thank you.

17           **THE COURT:**  Mr. Silcox, do you understand that you're

18   now under oath and that if you answer any of my questions

19   falsely, your answers could later be used against you in a

20   prosecution for perjury or making a false statement?

21           **THE DEFENDANT:**  Yes, Your Honor.

22           **THE COURT:**  Would you state your full name for the

23   record, please?

24           **THE DEFENDANT:**  James Heyward Silcox III.

25           **THE COURT:**  Mr. Silcox, where were you born?

1           **THE DEFENDANT:** Fayetteville, North Carolina.

2           **THE COURT:** How old are you, sir?

3           **THE DEFENDANT:** Forty-two.

4           **THE COURT:** How far did you go in school?

5           **THE DEFENDANT:** Graduate school.

6           **THE COURT:** Okay. This is the part of the script

7 where I say, so I guess reading and writing is pretty strong,

8 but we will skip over that one.

9           **THE DEFENDANT:** Yes, sir.

10          **THE COURT:** Have you been treated recently for any

11 mental illness or addiction to narcotics or drugs of any kind?

12          **THE DEFENDANT:** Yes, Your Honor.

13          **THE COURT:** Tell me about that, please.

14          **THE DEFENDANT:** I self-referred to New Bridge on

15 October 3rd of last year for Tramadol addiction. Tramadol is

16 an opiate. And I'm proud to say today's day 257 clean.

17          **THE COURT:** Very good. Congratulations on that

18 period of sobriety.

19          **THE DEFENDANT:** Thank you, Your Honor.

20          **THE COURT:** Madame Clerk, I do get a little bit of an

21 echo loop. I don't know if you are getting that also. I

22 don't know what that might be attributable to. Just thought I

23 would mention it.

24    Mr. Silcox, I gather from that extended period of sobriety

25 that you are sober today. Are you -- Madame Clerk, whatever

1    you did it worked like a charm.  Now I can -- it's fantastic.

2         Are you currently under the influence of any other drug,

3    medication, or alcohol this morning?

4         (Response cannot be heard by the court reporter.)

5              **THE COURT:**  I want to ask you about a document --

6              **COURT REPORTER:**  Excuse me.  Your Honor, I did not

7    hear the defendant's answer.  He is muted.

8              **THE COURT:**  Oh, I see.  Okay.  Ms. Lee, did you hear,

9    Ms. Skillman?

10        I will ask, the question again even though you've already

11   answered it.

12        Mr. Silcox, this morning, putting Tramadol to one side,

13   are you currently under the influence of any drug or

14   medication or alcohol?

15             **THE DEFENDANT:**  No, Your Honor.

16             **THE COURT:**  You feel okay?

17             **THE DEFENDANT:**  Yes, sir.  Yes, Your Honor.

18             **THE COURT:**  I want to ask you about the charging

19   document in the case, which is the written statement of the

20   charges against you.  We call that an indictment.

21        The indictment in this case charges you with three counts

22   of the importation of a Schedule IV narcotic drug, which in

23   your case was Tramadol.  Did you get a copy of the indictment

24   in the case?

25             **THE DEFENDANT:**  I have seen it, Your Honor.  I have a

1    copy, yes, sir.

2            **THE COURT:**  Okay.  Did you read that document?

3            **THE DEFENDANT:**  Yes, Your Honor.

4            **THE COURT:**  And have you discussed the written

5    charges against you and the case in general with Mr. Levinsohn

6    as your lawyer?

7            **THE DEFENDANT:**  Yes, Your Honor.

8            **THE COURT:**  Have you been fully satisfied with the

9    counsel representation and advice that Mr. Levinsohn has given

10   you?

11           **THE DEFENDANT:**  Yes, Your Honor.

12           **THE COURT:**  Mr. Levinsohn, is it accurate there's no

13   plea agreement in this case?

14           **COURT REPORTER:**  He is muted.

15       **MR. LEVINSOHN:**  Your Honor, there is no agreement.

16   It's an open plea.  I do have a form that was filled out, but

17   it's not an agreement.

18           **THE COURT:**  Okay.  We'll get to the form in just a

19   moment.

20       At any time did Ms. Griswold or any of her colleagues

21   extend a plea offer to you?

22           **MR. LEVINSOHN:**  It was discussed.

23           **THE COURT:**  I don't want the details.  I just want to

24   know if that happened.

25           **MR. LEVINSOHN:**  It was discussed, yes, Your Honor.

1      **THE COURT:** Did you convey that offer to Mr. Silcox?

2      **MR. LEVINSOHN:** Yes. I hesitate to answer that

3  completely in affirmative because a formal offer wasn't made,

4  but it was discussed what it would be if it were to be made.

5  That's a better way to put it.

6      **THE COURT:** The Government said something like, we're

7  not ready to make you a formal offer yet, but the way we see

8  the case is, that if it ever were going to resolve, it would

9  have to be something in the neighborhood of "X" months.

10      **MR. LEVINSOHN:** It was -- if I may, Your Honor. It

11  wasn't so much months, it was, frankly, eligibility for a

12  diversion, which the Government -- at least until -- I guess

13  until -- perhaps not as of today, but at the time this was

14  being discussed did not -- required that a stipulation not to

15  be allowed in a diversion was part of their plea agreement, so

16  that's why the decision was made to plead open.

17      **THE COURT:** Okay. I'm trying to avoid getting

18  into -- hold on.

19      It's hard to report these.

20      I'm trying not to get into the details of what the offer

21  was. I'm required to make sure that the defendant receive the

22  information that the Government had extended an offer before

23  he enters a plea this morning. And so that's the point on

24  which I was trying to obtain clarity.

25      So let me ask it this way: Whatever your discussions were

1    about the circumstances, if any, under which the Government

2    would permit your client to plead guilty, were all of the

3    material facts of those discussions relayed to Mr. Silcox?

4            **MR. LEVINSOHN:**  Yes.  I can represent that that's

5    correct.

6            **THE COURT:**  Very good.

7       Mr. Silcox, returning my questioning back to you, I

8    understand that you're intending to plead guilty a little bit

9    later this morning.  Has anybody attempted to force you to

10   plead guilty or threatened you in any way?

11           **THE DEFENDANT:**  No, Your Honor.

12           **THE COURT:**  Has anybody threatened anybody close to

13   you, any members of your family or friends?

14           **THE DEFENDANT:**  No, Your Honor.

15           **THE COURT:**  Has anybody made you a promise of any

16   kind that if you enter a guilty plea, they will do something

17   for you or something else will happen for you?

18           **THE DEFENDANT:**  No, Your Honor.

19           **THE COURT:**  You know what a side deal is?

20           **THE DEFENDANT:**  Yes, Your Honor.

21           **THE COURT:**  I gather from what you said, there are no

22   side deals in this case; is that correct?

23           **THE DEFENDANT:**  Correct, Your Honor.

24           **THE COURT:**  Mr. Silcox, I don't know whether you have

25   a criminal record or not.  But there's no question that the

1  offenses that you will be pleading guilty to this morning are

2  felonies.  And if I accept your plea, you will be found guilty

3  of those crimes.  And when you are guilty of a felony, that

4  can deprive you of certain valuable civil rights, such as the

5  right to vote, the right to hold public office, and the right

6  to serve on a jury, and the right to possess any kind of

7  firearm.

8      Are you aware of that?

9          **THE DEFENDANT:**  Yes, Your Honor.

10          **THE COURT:**  Ms. Griswold, would you please state for

11  the record the maximum possible penalties provided by law for

12  the crimes in the indictment and any mandatory minimum

13  penalties?

14          **MS. GRISWOLD:**  Yes, Your Honor.

15  (Audio fail) -- counts as Your Honor indicated.  They all

16  carry the same penalties, which the Court could impose on

17  concurrent or consecutively.  For each count, the maximum term

18  of imprisonment is five years.  There's a minimum supervised

19  release term of one year, a maximum supervised release term of

20  life, a maximum fine of $250,000, and a $100 special

21  assessment.  There is also a forfeiture allegation in the

22  indictment.

23          **THE COURT:**  Thank you, Ms. Griswold.

24      Mr. Silcox, the forfeiture allegation means that the Court

25  has the authority, if you're convicted of these crimes, to

order that you forfeit any drugs or other contraband, any firearms or ammunition and any cash the Government seized as a part of your arrest in this case.

Do you understand that?

**COURT REPORTER:**  No answer.

**THE DEFENDANT:**  Yes, Your Honor, I understand.

(Pause in the proceedings.)

**THE COURT:**  I apologize for these delays at the bench.  I'm having some issues with my laptop.

Mr. Silcox, do you understand that because these are narcotics offenses the Court might also have the discretion to order that you be ineligible for certain federal benefits?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  I want to talk for just a second how the Sentencing Guidelines will apply in your case and also a statute called Section 3553(a).

Have you talked to Mr. Levinsohn about the sentencing guidelines and how they might work in your case, Mr. Silcox?

**THE DEFENDANT:**  No, Your Honor, but I'm aware of the sentencing guidelines.

**THE COURT:**  Mr. Levinsohn, hold on.

Mr. Silcox, would you give me your rough understanding, if you have one, of how the sentencing guidelines work?

**THE DEFENDANT:**  Your Honor, they set the standard, the minimum and maximum for sentencing for each offense.

**THE COURT:** That's not bad, actually. That's true. And that's how they work.

There is a Sentencing Commission that has been established that every year, although not last year, they publish sentencing guidelines. And they set a range, a sentencing range for every federal crime. And the ranges go up as the crimes get more serious or as the Sentencing Commission or Congress view the crimes as being more serious, they go down as the crimes get less serious.

For somebody who has a higher criminal history, again, the ranges are higher. And for someone with a lower criminal history, the ranges are lower. So for the same crime, somebody with a higher sentence will have a higher recommended sentence for the same -- that didn't come out right.

For the same crime, a defendant with a lengthier criminal history of a higher recommended sentence than a defendant with less of a criminal history.

You follow me?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** And those guidelines aren't mandatory. In other words, I don't have to impose the sentence that it says in the guidelines, but I have to start there. That really has to be the starting point of any sentencing calculation that I do.

Do you understand me so far?

1          **THE DEFENDANT:**  Yes, Your Honor.

2          **THE COURT:**  Now, the way it works is that if you

3     enter a guilty plea, I will refer the case to the Probation

4     Department, and they will prepare a written presentence

5     report.  And there will be a sentencing guidelines calculation

6     in there.  The united States Attorney's Office, the

7     prosecutor, they will also do a calculation.  Your lawyer will

8     do a calculation.  I'll do a calculation.  It's not until that

9     calculation has been done that I have any idea what the

10    appropriate sentencing range is under the guidelines.

11       Understand?

12         **THE DEFENDANT:**  Yes, Your Honor.

13         **THE COURT:**  So that means, as I sit here right now, I

14    actually have no idea what an appropriate sentence in your

15    case is.  Do you follow me?

16         **THE DEFENDANT:**  Yes, Your Honor.

17         **THE COURT:**  Do you understand that because that range

18    has not been -- well, strike that.

19       Do you understand that after the calculation has been

20    performed, I have to look at all the facts and have had a

21    chance to listen to what everybody has to say, that I might

22    impose a sentence that could be higher or lower than any

23    estimate your lawyer might have given you.

24         **THE DEFENDANT:**  Yes, Your Honor, I understand.

25         **THE COURT:**  And you understand because there is not a

plea agreement in this case, that if it comes to the day of

sentencing and I impose a sentence, and it's a higher sentence

than the one you thought you were going to get, you are not

going to be able to withdraw your plea.

Do you understand that?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  The Court also, after it's done a

guidelines calculation, looks at all the sentencing factors

that are listed in a statute called, Title 18, United States

Code, Section 3553(a).  And commonly people just don't say all

the stuff in the beginning and they say 3553(a).  I won't list

every factor in there, but the point of the statute is to have

the Court look at the whole case and the whole defendant.

And so it will think about things like the defendant's

personal characteristics, how likely it appears that the

defendant would offend again if they were released from

custody earlier rather than later.  How other defendants who

committed the same crime have been treated because that's a

basic fairness point.  Two people did the same crime and they

have more or less equal criminal histories, you would want the

Court to at least start by considering whether those people

ought to be treated the same.  What are the policies

underlying the sentencing statutes?  How much harm did the

crime cause the community to suffer?  And all these other

factors that are not captured in the sentencing guidelines.

1    Does that makes sense?

2         **THE DEFENDANT:** Yes, Your Honor.

3         **THE COURT:** And it is not until I have considered all

4    those factors, and your lawyer has told me the factors that he

5    thinks is relevant, and Ms. Griswold has told me the factors

6    she thinks is relevant, and I've listened to their arguments

7    and done my own thinking, it's not until I have done all of

8    that until I finally know what an appropriate sentence is.

9    Does that make sense?

10        **THE DEFENDANT:** Yes, Your Honor.

11        **THE COURT:** And, again, because of the discretion I

12   get and the consideration of these factors, the sentence I

13   ultimately impose could be higher than a guideline sentence

14   but it could also be lower.

15   Do you understand?

16        **THE DEFENDANT:** Yes, Your Honor.

17        **THE COURT:** Mr. Silcox, you have several very

18   important rights because you are being charged with a crime in

19   a Federal Court in the United States. These rights make our

20   system much fairer than the systems of other countries that do

21   not have these rights. And you could insist on those rights

22   as a defendant in a Federal Court.

23   When you plead guilty, you give those rights up and you

24   are essentially voluntarily ending the case yourself. So I

25   just want to go over those rights with you. I'm not going to

stop after each one, but I would ask that you listen carefully because as I said, these rights are very important and they are what makes our system fairer than systems that don't have them.

First, you have the right to plead not guilty to any crime charged against you and to persist in that plea. "Persist" means you never have to change your plea. You can just say not guilty and see if the Government can prove its case.

You have the right to a trial by jury. At that trial, you would be presumed to be innocent and the Government would have to prove your guilt beyond a reasonable doubt. You wouldn't have to prove anything because you don't have any burden.

You'd have the right to the assistance of a lawyer for your defense, and if you couldn't afford a lawyer, we would appoint one for you. Not just at the trial, but at every other stage of the case.

You have the right to see and hear all the witnesses and have them cross-examined in your defense. You have the right on your own part to decline to testify unless you voluntarily elect to do so in your own defense. That means, shorthand, you never have to testify unless you want to. Nobody can call you as a witness. Your own lawyer can't do that, the prosecutor certainly can't do that. Nobody can do that. That decision remains with you all the time.

I told you a moment ago you don't have any burden of

proof.  And that's true.  You and your lawyer can just sit quietly at the defense table, cross-examine the Government's witnesses, see if they can make their case, and not put on one shred of evidence or one shred of testimony.  But if you want to testify, you can.  And if you want to put on evidence, you can.

And you can use the Court's subpoena power to make people come in and testify as a witness, and you can make them bring in documents or other evidence that you think might be helpful to your case.

Do you understand that you have all these rights, Mr. Silcox?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  Do you understand that if you plead guilty in front of me this morning, that you are giving up those rights?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  Do you understand that because you will have waived those rights, there won't be a trial in your case, and we will just enter a conviction?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  One last thing you should be aware of: Let's say that you didn't testify or you didn't put on any evidence, and you did have a trial, nobody could say anything about that.  I couldn't, the prosecutor couldn't, nobody could

1    say to the jury, for example, how come we haven't heard from

2    Mr. Silcox.  If he's not guilty, what's his side of the story?

3        And they also couldn't say, well, you know, we put in all

4    this evidence, and maybe Mr. Levinsohn wants to talk about how

5    our evidence is not very good, Mr. Silcox didn't put in any

6    evidence.

7        The reason the prosecutor couldn't make comments like that

8    is, that would make it seem like you had some obligation to

9    testify, which you don't have.  Or make it seem like you have

10   an obligation to prove something, which you don't have.

11       Do you understand that if you decided not to testify or

12   put on any evidence, that those facts couldn't be used against

13   you?

14               **THE DEFENDANT:**  Yes, Your Honor.

15               **THE COURT:**  Give me just a moment.  I should have

16   pulled up the Ninth Circuit jury instructions on my computer.

17   I am going to do it right now.

18                   (Pause in the Proceedings.)

19               **MR. LEVINSOHN:**  It occurred to me that we didn't --

20   it wasn't discussed if I either wanted to consult briefly with

21   Mr. Silcox or he wants to ask me a question during that -- so

22   far it seems he's doing okay -- mechanically how do we do

23   that?

24               **THE COURT:**  Well, I don't know if Mr. Silcox has a

25   text-capable phone or iPad with him.  He could communicate

1   with you that way.  If you needed a lengthier consultation

2   than that, then I suppose we would have to recess the

3   proceedings.

4           **MR. LEVINSOHN:**  Okay.

5           **THE COURT:**  Let me know if that happens.  And,

6   Mr. Silcox, you also let me know if that happens.  I don't

7   want you to be in a situation where you think I'm not sure

8   about the Judge's question, I'm not sure about something else,

9   I need to talk to my lawyer, if that happens, will you please

10  let me know?

11          **THE DEFENDANT:**  Yes, Your Honor.

12          **THE COURT:**  We will figure it out.

13          **MR. LEVINSOHN:**  Thank you, Your Honor.  I think

14  that --

15          **THE COURT:**  Mr. Silcox, has that happened so far?

16          **THE DEFENDANT:**  No, Your Honor, I'm good.

17          **THE COURT:**  Okay.

18      As we were saying earlier, you are charged with three

19  counts in this indictment of unlawful importation of a

20  controlled substance pursuant to Title 21, United States Code,

21  Section 952 and 960(b) subpart 6.

22      I have the Ninth Circuit jury instruction for that offense

23  in front of me right now.  In order to get a conviction on

24  those counts for each separate count, the Government would

25  have to prove the following elements beyond a reasonable

1    doubt:

2       First, you knowingly brought tramadol into the United

3    States from a place outside of the United States. Secondly,

4    you knew that the substance you were bringing into the United

5    States was tramadol or some other prohibited drug.

6       The Government would not need to prove any specific amount

7    or quantity of tramadol in order to get a conviction on any of

8    these counts. They would have to prove only beyond a

9    reasonable doubt that there was a measurable or detectable

10    amount of tramadol in the substance that you imported.

11       Also, the Government would not need to prove that it

12    was -- that you knew exactly that it was tramadol, they would

13    only need to prove that it was some kind of a prohibited drug.

14       Those are the elements set out in the pattern jury

15    instruction that this court would use if your case went to

16    trial.

17       Do you understand that if you plead guilty this morning

18    your --

19           **COURT REPORTER:** You froze.

20           **THE DEFENDANT:** Yes, Your Honor.

21           **THE COURT:** Mr. Silcox, is there a form,

22    Mr. Levinsohn, that Mr. Silcox would be submitting to the

23    court this morning?

24           **MR. LEVINSOHN:** Yes, Your Honor. I have it here. I

25    have it here, yes.

1          **THE COURT:**  Okay.  Well, Ms. Lee has a device that

2     she will use to accept your paper.  I'm just going to bring it

3     up on the bench with me.  That's what I'm going to do.  You

4     are wearing a mask so that's fine.  I need to see it.

5          **MR. LEVINSOHN:**  May I approach?

6          **THE COURT:**  Please.

7          **MR. LEVINSOHN:**  Thank you, Your Honor.

8          **THE COURT:**  Please maintain whatever distances still

9     allows you to hand Ms. Lee that document.

10                    (Document handed to Court.)

11     Great.  Thank you.

12     I'll wash my hands when we are done.  I just want to make

13     sure there is enough of a factual basis in here.

14     Okay.  Here's what paragraph 5 of this form says.

15     "I know that this Court must be satisfied that there is a

16     factual basis for a plea of guilty before my plea can be

17     accepted.  I represent to the Court that I took the following

18     actions in connection with the charges made against me in

19     Counts 1, 2, 3, and these facts are true and correct:"

20     And then written onto the form, it states, "On the dates

21     alleged, I knowingly and unlawfully imported a Schedule IV

22     narcotic drug to wit: Tramadol."

23     I want to put just a little bit of meat on those bones,

24     and here's why, Mr. Silcox.  This isn't just I'm following the

25     script, I'm doing this for drill kind of thing.  I would never

want somebody to come into my courtroom and plead guilty to

something they didn't do.  So I just need a minimum assurance

that they actually did some conduct that makes them guilty of

the thing they are pleading guilty to.

Now, it may sound crazy to you that anybody would plead

guilty to a federal crime they didn't commit, but I promise

you it has happened.  So, let me get the indictment in front

of me, and I'll just -- I think I just need to look at the

dates.

Because as we said earlier, it really is -- it's the same

crime and the dates that are given there are July 11, 2019 in

Count 1, August 28, 2019 in Count 2, and September 13, 2019 in

Count 3.

What did you do on those dates that makes you guilty of

this crime?

**THE DEFENDANT:**  Your Honor, I'm not -- as far as the

dates go, I'm not sure if those are the dates they were seized

or the dates they're saying I purchased and ordered the

tramadol, but I ordered tramadol from overseas to feed my

addiction.

**THE COURT:**  I see.  Okay.  Then that's the answer.

And there was somebody overseas who was supplying

tramadol.  And is that something you can just order over the

internet?

**THE DEFENDANT:**  Yes, Your Honor.

1          **THE COURT:**  All right.  And are you confident that

2     you did that on at least three different dates within that

3     period of time described -- you know, over that period of

4     time?

5          **THE DEFENDANT:**  It would undermine my recovery not to

6     be honest.

7          **THE COURT:**  So the answer is, yes, you did it on at

8     least three dates?

9          **THE DEFENDANT:**  At least.  Yes, Your Honor.

10          **THE COURT:**  All right.  Then I'm satisfied there is a

11     factual basis for the plea.

12     Ms. Griswold, would you please make a representation

13     concerning the facts the Government would be prepared to prove

14     at trial if Mr. Silcox did not enter a guilty plea this

15     morning?

16          **THE DEFENDANT:**  Yes, Your Honor.  Thank you.

17          **THE COURT:**  Ms. Griswold, I believe your microphone

18     is muted.

19          **MS. GRISWOLD:**  Thank you.

20     If the parties were to proceed to trial, the Government

21     would prove the following facts beyond a reasonable doubt

22     through evidence, including Government witnesses, Government

23     records, and the defendant's own post-*Miranda* interview.

24     In September and October 2017, the defendant opened two

25     P.O. Boxes at different Post Offices.  He opened them to use

them to retrieve tramadol shipments from overseas. Tramadol

is a Schedule IV narcotic drug.

During a post-*Miranda* interview, the defendant said he

began purchasing tramadol in 2017 online from an unknown

person he believes is in Singapore. The defendant said he has

received shipments for tramadol from three separate overseas

suppliers from 2017 to 2019. He estimated that he shipped 500

to 1,000 pills per month to downstream buyers, which he

received from his overseas suppliers at his P.O. Boxes.

The defendant communicated with his oversea suppliers

through end-to-end encrypted communication applications

WhatsApp and Wickr, and with downstream domestic customers

through the end-to-end encrypted email service ProtonMail.

Import history research and records checks linked to the

defendant -- linked the defendant to at least eight seizures

of narcotics inbound to the United States --

**THE COURT:** Ms. Griswold, Mr. Levinsohn, would you

mute your microphone, please, and also Mr. Silcox?

This will make it easier for Ms. Skillman.

Go ahead.

**MS. GRISWOLD:** Thank you.

Import history research and records checks linked the

defendant to at least eight seizures of narcotics inbound from

to the United States from Germany and Singapore. The seizures

have included tramadol, modafinil, and cocaine, and were all

bound to various U.S. Post Office Boxes in the San Francisco
Bay Area.

     The defendant did all of this in exchange for payments via
cryptocurrency, Venmo, and PayPal, as well as in tramadol.

     As to the specific counts, Count 1 charges that on or
about July 11th of 2019, in the Northern District of
California and elsewhere, the defendant knowingly imported
tramadol into the United States from a place outside knowing
it was tramadol he was importing.

     Specifically, on or about July 11th, 2019, Custom and
Border Protection officers assigned to the JFK International
Air Mail Facility inspected a package inbound for the United
States from a shipper in Singapore.  CBP officers discovered
approximately 865 grams of tramadol inside the package.  It
was addressed to a variation of the defendant's name Jim
Sicox, at one of the defendant's Post Office Boxes in Alameda.

     As to Count 2, alleging the importation of tramadol on or
about August 28th, 2019:  Specifically, on that date, CBP
Officers assigned to the San Francisco Air Mail Facility
intercepted a package inbound to the United States from
Germany.  The package contained 650 200-milligram tablets of
tramadol.  The package was addressed to another variation of
the defendant's name James Silox at a second P.O. Box rented
by the defendant in Alameda.

     On September 16th of 2019, Special Agents of DHS, HSI, the

1    U.S. Postal Inspection Service, DHS Office of Inspector

2    General, and the Coast Guard Investigation Service conducted a

3    controlled delivery of the second package which contained by

4    then a substitute material in lieu of the tramadol.  It was

5    delivered to the defendant's second P.O. Box.  It contained

6    the original packing material and label.

7        The defendant went into the Post Office and collected that

8    package from the counter.  He then took it back to his car,

9    returned to the Post Office asking about a second package he

10    was expecting.  And when he was told there was no second

11    package he left.

12        The third count alleges importation of tramadol on or

13    about September 13th of 2019.  Specifically, on September 13th

14    of 2019, CBP Officers assigned to the San Francisco Air Mail

15    Facility intercepted a package inbound to the United States

16    from Singapore.  According to CBP, the package contained 458

17    grams of tramadol in tablet form.  The package was addressed

18    again to a variation of the defendant's name, James Silox, at

19    the defendant's second P.O. Box in Alameda.

20        Those are the facts the Government would prove beyond a

21    reasonable doubt at trial.

22        **MR. LEVINSOHN:**  Your Honor, if I may, Mr. Silcox

23    indicated a desire to consult with me briefly.  Is there a

24    way -- I hate to do this to the court, but if we can just

25    recess for a few minutes, I know that he wanted to ask me a

1   couple of questions.  He indicated --

2           **THE COURT:**  I have to tell you --

3           **COURT REPORTER:**  Excuse me.  I can't hear you, Your

4   Honor.  You're muted.

5           **THE COURT:**  Thank you, Ms. Skillman.  Let me repeat

6   what I said.

7       Of course Mr. Silcox can do that.  I'm not going to take

8   his plea if he needs to consult with his lawyer.

9       I do have an in-custody sentencing that was scheduled at

10  10:30, so I just need -- I need you to consult, and then if it

11  appears a lengthier consultation is required, we are going to

12  need to continue the plea.

13      But why don't you do that and then we'll see where that

14  leaves us.

15          **MR. LEVINSOHN:**  Thank you, Your Honor.  I don't think

16  it will take terribly long.  If we can step out briefly.

17          **THE COURT:**  Sure.

18          **MR. LEVINSOHN:**  I will mute my --

19                  (Pause in the Proceedings.)

20          **THE COURT:**  All right.  The record will reflect that

21  Mr. Levinsohn and Mr. Silcox are now back in the courtroom.

22      Mr. Levinsohn, did you and Mr. Silcox have an adequate

23  opportunity to confer?

24          **MR. LEVINSOHN:**  Yes, Your Honor.

25          **THE COURT:**  Mr. Silcox, was Mr. Levinsohn able to

1   answer whatever questions or concerns you had?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Okay.

4       I want to ask you about another document, now that I have

5   it at the bench, Mr. Silcox.  I am going to hold it up.

6       This is the Application for Permission to Enter Plea of

7   Guilty and Order Accepting Plea that your lawyer handed to my

8   courtroom deputy who then handed it to me.

9       Have you seen this document before?

10           THE DEFENDANT:  I have, Your Honor.

11           THE COURT:  And the document is printed as a blank

12  form, and then it's filled out in blue ink -- it's filled out

13  in blue ink with the particulars of this particular case,

14  correct?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  It actually indicates there, you

17  indicated that you had attended graduate school.  You have a

18  Juris Doctor degree.

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  And you were a United States Coast Guard

21  Officer.

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  It's neither here nor there, but I think

24  the branches of the military do a pretty good job training

25  their officers so I thought I would put that on the record.

1          **THE DEFENDANT:**  Thank you.

2          **THE COURT:**  Did you read this form thoroughly?

3          **THE DEFENDANT:**  Yes, Your Honor.

4          **THE COURT:**  And did you have a chance to talk to

5     Mr. Levinsohn about the form before you signed it?

6          **THE DEFENDANT:**  I did, Your Honor.

7          **THE COURT:**  Did he answer any questions that you had

8     about the form?

9          **THE DEFENDANT:**  He did, Your Honor.

10         **THE COURT:**  To the extent that this form says

11    anything about your conduct or what you knew or what you

12    intended to do, is this form accurate?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  On page 6 there are two signatures.  One

15    of them appears to be your lawyer's signature.  The other one

16    above that has today's date and what looks to me to be your

17    signature.  Is it your signature?

18         **THE DEFENDANT:**  It is, Your Honor.

19         **THE COURT:**  Did you place your signature there only

20    after reading this form thoroughly?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Mr. Levinsohn, is that also your

23    signature?

24         **MR. LEVINSOHN:**  Yes, it is, Your Honor.

25       One moment.

1      Yes, it is, Your Honor.

2      **THE COURT:** Do counsel agree that the Court has

3  discharged its obligations under Rule 11?

4     Ms. Griswold?

5      **MS. GRISWOLD:** Yes, Your Honor.

6      **THE COURT:** Mr. Levinsohn?

7      **MR. LEVINSOHN:** Yes, Your Honor.

8      **THE COURT:** Before I ask Mr. Silcox to enter a change

9  of plea, is there anything further that we should be --

10      **COURT REPORTER:** You've frozen.

11      **MS. GRISWOLD:** Not from the Government, Your Honor.

12      **THE COURT:** Mr. Levinsohn?

13      **MR. LEVINSOHN:** Your Honor, Mr. Silcox does want to

14  make an application to the Court about his -- where he can be

15  in the interim period between now and sentencing. I have

16  discussed that with counsel. We need a moment to address that

17  after the plea, but that is something he wants the Court to

18  consider.

19      **THE COURT:** He will ask not to be taken into custody

20  this morning.

21      **MR. LEVINSOHN:** That is correct. He also -- his

22  family is moving to the state of Florida, and he would like

23  the Court's permission to -- this has been discussed ahead of

24  time with counsel, and Pretrial Services has made arrangements

25  for him to be supervised in Florida.

1    So with the Court's permission, he would like to reside

2    there and then return for the sentencing and then

3    ultimately -- if he is granted probation or diversion, serve

4    that in Florida.

5        **THE COURT:**  Both for matters of substance and also

6    for appearance, I am going to take that issue up after I

7    determine whether he's going to plead guilty.  Otherwise it

8    might make it appear that he's prepared to plead guilty only

9    if he gets to move to Florida, which is not really the order

10   of proceedings this morning.

11       **MR. LEVINSOHN:**  Understood.  That's why I inquired.

12   Other than that, I have nothing else to bring up.

13       **THE COURT:**  Other matters for the record?  You said

14   there's nothing else.

15   Mr. Silcox, have you heard and understood all of the

16   proceedings this morning?

17       **THE DEFENDANT:**  Yes, Your Honor.

18       **THE COURT:**  Are you ready to enter a change of plea?

19       **THE DEFENDANT:**  Yes, Your Honor.

20       **THE COURT:**  Do you understand that when you enter a

21   change of plea, that I will immediately thereafter find for

22   the record that you have been convicted of these offenses?

23       **THE DEFENDANT:**  Yes, Your Honor.

24       **THE COURT:**  I will ask you with regard to each count

25   of the indictment separately, just to produce a clear

1    record -- and while I am on that, Ms. Griswold, as a courtesy

2    to the court reporter, it appeared to me that in order to be

3    complete and accurate, you were reading from a prepared

4    summary of the facts when I asked for what the Government

5    could prove.

6         Could you please email that to Ms. Skillman?

7              **MS. GRISWOLD:**  Yes, Your Honor.

8              **THE COURT:**  I think that would be helpful to her in

9    preparing a transcript of the proceedings.

10        All right.  In the United States of America versus James

11   Heyward Silcox III, that's case number 19-CR-491, to Count 1

12   of the indictment, which charges you with importation of a

13   Schedule IV narcotic drug, how do you plead?

14             **THE DEFENDANT:**  Guilty, Your Honor.

15             **THE COURT:**  To Count 2 of the indictment, which also

16   charges you with a violation of 21, United States Code,

17   Section 952 and 960, importation of a Schedule IV narcotic

18   drug, how do you plead?

19             **THE DEFENDANT:**  Guilty, Your Honor.

20             **THE COURT:**  And to Count 3, which charges you with

21   the same offense, how do you plead?

22             **THE DEFENDANT:**  Guilty, Your Honor.

23             **THE COURT:**  I accept those pleas.

24        I find that you are fully competent and capable of

25   entering an informed plea; that you are aware of the nature of

1   the charges against you and the consequences of your plea; and

2   that your guilty pleas are knowing and voluntary pleas

3   supported by an independent basis in fact containing each of

4   the essential elements of the offense.  I accept your guilty

5   pleas, and I find you guilty of each of those three offenses.

6       Ms. Griswold, you heard what Mr. Levinsohn said a moment

7   ago about the defendant's desire to relocate to Florida

8   pending a sentencing determination.

9       Do you wish to be heard?

10          **MS. GRISWOLD:**  Yes, Your Honor.  Thank you.

11      I've communicated with the defendant's Pretrial Services

12  Officer, Brad Wilson, and from my discussions with him, I

13  understand that Pretrial Services has no objection to this

14  request.  And based on the information I am about to provide,

15  the Government also has no objection.

16      So, first, Pretrial Services here has been in contact with

17  the supervision -- the supervisor in the Middle District of

18  Florida's Orlando office who has approved the transfer of the

19  defendant to their supervision.

20      And so Mr. Wilson suggested that the modification to the

21  defendant's pretrial release would be that he be allowed to

22  relocate permanently to the Middle District of Florida.  And

23  then we would ask only that his travel be restricted to that

24  district, and then to the Northern District of California for

25  court.

1    **THE COURT:**  All right.

2    **MS. GRISWOLD:**  I'm sorry, one more thing.

3    Pretrial Services wants prior approval restriction for any

4    travel outside of the Middle District.

5    **THE COURT:**  I will incorporate my approval of this

6    request into my remarks, which are as follows:

7    Mr. Silcox, I will not remand you into the custody now

8    pending sentencing, rather I will leave you at liberty as you

9    have been up until this point, and you will be subject to all

10   the same conditions of pretrial release that you have been

11   subject up until now, and that will be true pending sentencing

12   or until further Court order.

13   I will also allow you to relocate to the state of Florida

14   provided that you have obtained the permission of Pretrial

15   Services and that that permission is contained in writing and

16   that any conditions that Pretrial Services has placed on your

17   relocation to Florida also are in writing.

18   I do that just so there is a clear record and it

19   doesn't -- we don't get down the road and then you have done

20   one thing and they thought you were supposed to do another

21   thing.  I am understanding that they have granted you this

22   permission.  And if you have it in writing, then you are good

23   to go.  If you don't have it in writing, you just need to get

24   it in writing.

25   One comment I want to make is that we don't have --

although we don't have a program called Diversion, we do have

a program called ATIP.  It is my belief that that is the

program that Mr. Levinsohn is going to ask you be referred to.

My knowledge of that program extends only as far as this

District, meaning in each of our three courthouses, we have a

judge who supervises that program, our district designed that

program, and all of the services that are provided through

that program are provided here in the Northern District.

I'm not saying that Florida doesn't have a similar

program, I'm not saying that it's not possible to apply for --

I'm not saying that a program with similar goals is not

available in Florida or that there isn't some way of putting

you into that program.  I'm just saying it's not clear to me

that there is either.  That's just something I don't know.

I mention this only because Mr. Levinsohn mentioned his

desire to put you into a program like that, and I don't want

you to think that just because we held this hearing, I heard

what Mr. Levinsohn said, I let you move to Florida, that I was

concluding that you are eligible for a program down there

because I don't know anything about it.

Does that make sense?  Any questions about that?

Okay.

**COURT REPORTER:**  Excuse me, Your Honor.  His

microphone was mute so I did not hear an answer to those

questions.

1          **THE COURT:**  I see.  All right.

2     Mr. Silcox, would you unmute for just a second.  And I'll

3     just ask you, is it correct that you stated a moment ago that

4     you understood everything I said and you didn't have any

5     questions about that?

6          **THE DEFENDANT:**  I understand, Your Honor.  No

7     questions.

8          **THE COURT:**  Very good.  I do want to set a sentencing

9     date.  I am gathering, Mr. Levinsohn, that you are requesting

10    a referral to Pretrial Services for ATIP evaluation?

11         **COURT REPORTER:**  Excuse me, Your Honor.

12    Mr. Levinsohn is muted.

13         **MR. LEVINSOHN:**  The Court asked me if I was

14    requesting a referral to ATIP, and my answer was yes.

15         **THE COURT:**  I make that referral.

16    I want to say that we should put this over at least eight

17    weeks based on past experience.  And I guess -- I don't want

18    to make -- I don't want to ask the Probation Office to do a

19    PSR yet because it might turn out that I don't need it and

20    they have enough to do.

21    My suggestion, unless counsel want to say otherwise, is

22    let's send the matter to Pretrial Services.  Let's let them do

23    their evaluation.  I -- the lawyers and I and Mr. Silcox can

24    receive the evaluation, we can have a hearing, parties can

25    make their views known as to whether placement in that program

1    is appropriate one way or the other, and then if it turns out

2    I'm not going to make that referral, then I can refer it to

3    Probation.

4        Mr. Silcox is going to be out of custody and so it seems

5    to me there's no reason to rush this.  We can do it in

6    sequence.

7        Mr. Levinsohn, does that make sense?

8            **MR. LEVINSOHN:**  It does, Your Honor.  I don't know if

9    the Court wants to address dates yet, but what the Court says

10   makes imminent sense.

11           **THE COURT:**  Ms. Griswold, does that make sense to you

12   also?

13           **MS. GRISWOLD:**  Yes, Your Honor.

14           **THE COURT:**  Let's err on the side of giving Pretrial

15   enough time.  Let's make it about ten weeks.  That would take

16   us out to mid-September.  And we could do either the 11th or

17   the 25th of September.  The 18th is not available on the

18   Court's calendar.

19           **MR. LEVINSOHN:**  Let me check, if I may.  I should

20   know this offhand, but I don't.  What day is Yom Kippur?  If I

21   could have just a moment.

22                   (Pause in the Proceedings.)

23           **MR. LEVINSOHN:**  I apologize.  The 25th is fine.

24           **THE COURT:**  Ms. Griswold, does that work on your

25   calendar also?

1          **MS. GRISWOLD:**  Yes, Your Honor.

2          **THE COURT:**  The Court will set the matter for --

3     we'll just call it sentencing status on September 25th.  And

4     the minutes of today's hearing will reflect that the Court

5     will receive the ATIP recommendation, and we can discuss it on

6     that day.

7          **MR. LEVINSOHN:**  Thank you, Your Honor.

8          **THE COURT:**  Mr. Silcox, I wish you the best of luck.

9        In the meantime, I will order you to be personally present

10    on that date at 9:30 a.m.  I'm not worried that you won't be

11    there, but I'm required to tell you that if you don't show up,

12    that that is separately a crime and we will come looking for

13    you.

14         **THE DEFENDANT:**  Yes, Your Honor.

15         **THE COURT:**  And there is a reason they make movies

16    about the United States Marshals' ability to find people and

17    that is they are really good at it.  Make sure you are here on

18    that date.

19       All kidding aside, the penalties for failing to appear are

20    quite severe.

21       That concludes this proceeding.  We will see everybody in

22    September.

23         **MR. LEVINSOHN:**  Thank you very much, Your Honor.

24         **MS. GRISWOLD:**  Thank you, Your Honor.

25              (Proceedings adjourned at 11:04 a.m.)

## CERTIFICATE OF REPORTER

I, Diane E. Skillman, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Diane E. Skillman*

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

Tuesday, November 3, 2020