Michael Levinsohn SBN 146492
1370 Trancas St., #765
Napa, CA 94558
Cell: (310) 420-9081
Fax: (877) 631-5658
Mylawyermichaellevinsohn@gmail.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 0971 4:19CR00491-001 JST |
| Plaintiff, | Defense Sentencing Memorandum |
| vs. | |
| JAMES SILCOX, | Date: May 28, 2021 |
| Defendant | |

TO THE HONORABLE JUDGE OF THE ABOVE-ENTITLED COURT AND TO THE UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF CALIFORNIA:

Defendant James Silcox offers this memorandum in support of his application to the Court for probation as recommended by the Probation and Sentencing Report.

Date: May 28, 2021

//s//
Michael Levinsohn
Attorney for James Silcox

SILCOX SENTENCING MEMORANDUM CASE NO. 0971 4:19CR00491-001 JST

# TABLE OF CONTENTS

Issue ...............................................................................................................2

Statement of Facts ...........................................................................................3

Points and Authorities......................................................................................5

# TABLE OF AUTHORITIES

Cases

*United States v. Godinez-Perez* (2018) "(D.C. No. 2:14-CR-20066-JAR-1) (D. Kan.)..............6

*United States v. Shoffner* (2019) 942 Fed.3d. 818 ...........................................................8

*Pepper v. United States* (2011) 562 U.S. 476, 490 ........................................................8


Federal Statutes

18 US Code 3553..................................................................................................4

USSG §§2D1.1(a)(5) and (c)(17) ...............................................................................5

USSG §3E1.1(a) ..................................................................................................6


Other

U.S. Sentencing Comm'n, Recidivism and the "First Offender" (May 2004) .....................6

1
2
3

### Issue

4     A defendant who is a "True First Offender," who imports less than one-third of the
5     threshold quantity for the lowest Guideline level, who shows remorse, pleads early, and has
6     undertaken significant rehabilitation, is entitled to deference from the Court and an order of
7     probation. James Silcox has no prior record, imported a Schedule IV narcotic at a low-level, has
8     honestly taken responsibility, and has rehabilitated himself substantially and meaningfully.
      Should the Court follow the recommendation and grant Silcox probation?
9
10

### Statement of Facts

11    James Silcox is a year 2000 graduate of the United States Coast Guard Academy, a
12    Commander in the U.S. Coast Guard, a Florida attorney – in revoked, but not disbarred status --
13    and a family man with no record of previously being charged with any offense. He admittedly
14    became addicted to opioid pills by being prescribed them for an injury, and later imported them
15    illegally to support his own habit by distributing them to others. He has pleaded guilty to three
16    counts, which alleged the importation of 5,250 units of Tramadol, less than one-third the
17    threshold for a U.S. Sentencing Guideline above the minimum. He now applies to the Court for
      probation, following the Probation and Sentencing Report's recommendation.

18    Silcox is not proud of the fact that he imported the units of Tramadol. Always, Silcox
19    kept the bulk of the pills for himself, though did distribute a limited remainder among an
20    informal, rotating circle of people, some of whom were "regulars," and none of whom received a
21    quantity beyond what would supply their own use. Silcox takes full responsibility for these
22    actions.

23    For perspective, Silcox has now engaged in extensive treatment and been exposed to
24    many addicts, even in his current employment. He can offer to the Court that he has familiarity
25    with the amounts of Tramadol that "average" addicts use, approximately 10 units per day. By
26    contrast, Silcox himself was a heavy user, using around 20 units per day at his peak of addiction,
27    which went on for approximately two years. As an example, often, when traveling for a
28    weekend, he would bring two bottles with him to make sure he had enough to make it through.
      When not traveling, two bottles a week was not uncommon for Silcox.

The probation and sentencing report states that from July to September 2019, Silcox imported 5,250 tablets – units -- of Tramadol. Silcox himself would have used 600 per month between July and September, which are the months when the packages were intercepted. Therefore, Silcox would himself have used approximately 1,800 of the 5,250 units that he imported, approximately one-third of the total. Significantly, when Silcox eventually admitted himself to New Bridge for treatment (knowing it would end his military career) he informed the physician at intake that he was using 20 units of Tramadol daily. The doctor was so concerned, that he ordered a deviation from the standard detox protocol, and required that Silcox take tapered levels of Tramadol, since to do otherwise would have risked serious consequences of withdrawal. Silcox's detox and withdrawal went on considerably longer than the average and necessitated continuous medical supervision. For additional perspective, the number of units left to be distributed, 3,450, would have supplied approximately 3 others, if one assumes that they used half of what Silcox used at his peak.

Silcox has never avoided the fact that importing Tramadol was illegal and wrong. While this is ultimately no excuse, his addiction began while he was in the military and suffered a sports injury. This injury led to multiple surgeries, follow-on injuries, additional surgeries, and physical disability, each accompanied by prescriptions for Tramadol. The Catch-22 of prescription drug addiction in the military is that while Silcox became addicted because of prescriptions from military doctors, he could not seek treatment for his addiction. To do so would have required him to admit he'd obtained pills outside his prescription, and he would have been drummed out of the military immediately, and unceremoniously. This difficult situation led to Silcox's covert conduct. He was addicted, but to seek treatment while in the military would have ended his career. So, the cycle continued.

## Points and Authorities

### I. The Court should apply rule in 18 US 3553(a) and follow the recommendation for probation from Ms. Mar.

#### a. Probation has been recommended, and the Court should follow the recommendation.

The Presentence Report makes a strong and detailed case for probation, and the Court should find it persuasive and follow it. The Court is urged to consider the low level of offense and relatively small number of unites Silcox imported, Silcox's lack of prior record, his strong

4

1  character, his distinguished military record, and his exemplary post-conviction conduct and
2  rehabilitation.

3      At the outset, Silcox wants the Court to know that he takes full responsibility for his conduct.
4  Any language he used in his pre-sentence interview was not intended as an attempt to avoid
5  responsibility. Any intimation to the contrary, while perhaps understandable, should be
6  evaluated in the context of his entire statement, and the entirety of his conduct and life. Silcox
7  will not excuse, deny, minimize, or blame-shift. His sobriety and his long-standing character
   will not allow him to do so.

8      It appears that all parties agree that Silcox's progression with narcotics began with a sports
9  injury while in the military that led to him being prescribed opioid pain killers and eventually to
10 engage in activity designed to support his habit and supply others in a small circle. Silcox does
11 not want the Court to think that he is minimizing the importance of even that level of conduct.
12 He bought and distributed Tramadol, so that he would not have to use his own funds to buy it
13 and so that his wife would not be aware that he was doing this.

14     **b. The amount of Tramadol Silcox imported was low.**

15     Agents intercepted and can attribute to Silcox 5,250 units of Tramadol, a low-level,
16 Schedule IV narcotic. There were three essential instances in which this importation occurred,
   and the sum total was less than one-third the amount at lowest level in the sentencing guidelines,
17 which is 16,000. As stated in the Ms. Mar's report, this conduct starts Silcox at the base level of
18 6. USSG §§2D1.1(a)(5) and (c)(17).

19     **c. Silcox accepted responsibility as early as possible, and has expressed remorse**
20        **for his admitted actions.**

21     Silcox never challenged the agents who confronted him and was cooperative in all
22 respects. He pleaded guilty at his earliest opportunity, receiving the mandatory two-point
23 reduction. USSG §3E1.1(a). Silcox urges the Court to consider him a low-level offender, and to
24 apply the guidelines accordingly. In essence the Court is urged to follow the guidelines and the
   recommendation and should find that Silcox's character and rehabilitation make him an
25 exceptionally strong candidate for probation.

26
27
28

5

### d. **Silcox is a "True First Offender" and will not reoffend.**

This is Silcox's first charge, and only the second interaction with law enforcement in his life. The previous contact was an incident between Silcox and his wife in 2016. Silcox was arrested, but no charge was ever filed. He spent a total of a few hours in custody before being released, with no charge being filed, and with no follow-up by law enforcement of any kind. The Court is encouraged to consider the basic principle of the presumption of innocence – particularly when no there was no follow-up and no charge filed -- and find this prior, unfortunate, incident not to be an "offense," for purposes of finding Silcox to be a "True First Offender." There was no contact with the judicial system.

Federal courts have recognized the significance of this [True First Offender] status by citing favorably the May 2004 United States Sentencing Commission study on this importance of a lack of contact with the judicial system. That commission found as follows:

[D]efendants with no previous contact with law enforcement *or the judicial system*—so-called *"true first offenders"*—have lower recidivism rates than other defendants in Criminal History Category I with prior arrests or convictions.

*United States v. Godinez-Perez* (2018) "(D.C. No. 2:14-CR-20066-JAR-1)

(D. Kan.)..." quoting, *U.S. Sentencing Comm'n, Recidivism and the "First Offender"* (May 2004) at 13.

The original probation report by Ms. Mar had a simple, understandable, error, in that it stated that Silcox's wife reported that he had punched her several times in the head. This was simply a mistaken citation to the Alameda Police Department report and required a delay to provide the full report to the defense in order to clarify the issue. In fact, that report states that Silcox's wife *punched him* several times, and the report now reflects that fact. Silcox has no intention now of rehashing the specific facts of the incident itself, but is aware the Court can take into account even the alleged facts of an uncharged incident, and urges the Court to focus on the lack of charges and the subsequent reconciliation that took place.

Silcox does urge the Court to note that although no charges were filed in that matter, he and his wife took part in counseling, and there has been no repeat of any such incident. This is yet another example if Silcox's proactive approach to addressing the issues in his life. When

6

there is a problem, he faces it, takes corrective action, and moves on stronger and with greater insight. His family has been unified, going forward together since this incident.

### e. Silcox has had a decorated, distinguished military career.

James Silcox has served the United States admirably, and until his addiction took hold of him, with distinction, as a member of the Coast Guard. He was deployed to Iraq in 2004-2005, and engaged in combat and clandestine operations, for which he was awarded the Combat Action Ribbon. Attached is the citation and memorandum of this award.

Silcox graduated from the U.S. Coast Guard Academy in 2000 and advanced to the rank of Commander. He was discharged after a review of his conduct and his admission to his addiction. Silcox's discharge was termed "Under Honorable Conditions," which is one step below "Honorable." This level of discharge is considered by the Coast Gard to be administrative, rather than punitive, and allows him to maintain most of the benefits of military service. He will keep his military pension; the discharge resulted in a reduction of pay, but, significantly, not in rank.

### f. Silcox has a strong character reference from his commanding officer.

Attached is a letter from Silcox's commanding officer, Captain G.A. Burg, U.S. Coast Guard. Captain Burg cites Silcox's addiction as the driving force behind his misconduct, and yet does not see Silcox as making excuses or trying to avoid responsibility. The Court is urged to consider the following excerpt from Captain Burg's statement:

> *Before addiction, Heyward was a leader, a hard worker, and a patriot with the highest service reputation. There is no doubt that he will return to that now that he has beaten addiction and learned how to deal with his pain issues.*

See, Attachment, Captain Burg Character Reference.

Captain Burg also stresses the degree to which Silcox has essentially already been punished by the military, and how some of this penalty will continue, essentially, in perpetuity. The press releases and reduction in pay have comprised a "public shaming" that Captain Burg says is unique to the military. That punishment has consisted of a lowered pay grade, which apart from the humiliation, effectively levies a fine on Silcox of $1,000 per month for the rest of his life. Attached is Captain Burg's full statement for the Court's review. It is noteworthy that a military officer, whose reputation is paramount to him, has taken it upon himself to praise and endorse Silcox, particularly as it relates to his rehabilitation.

### g. Silcox's initial involvement with opioids was due to injury and prescription while in the military.

Silcox's involvement with opioids began with a sports injury during his military service and progressed from use of prescription pills to importing units to meet his own growing need, and to exchange and to exchange with others. Notably, relatively early in this process, medical records indicate concern by his doctors about the prescriptions he was receiving. No one ever told Silcox about this medical concern, and it went on, unaddressed by the military medical community, until he was arrested.

### h. Silcox's VA disability rating demonstrates that his addiction started with prescription medications.

Silcox's use of opioids began and continued by prescription due to a sports injury while in military service. As a result, the VA has determined Silcox to be "totally and permanently disabled," the percentages are distributed around a variety of physical disabilities, and 50% is attributed to *"PTSD Opioid Use Disorder."* The fact his addiction started by prescription, and progressed, is not offered as an excuse, but as an explanation as to how an otherwise stellar individual can become involved in importing narcotic pills.

### i. Silcox's rehabilitation as a mitigating factor and is supported by case law.

Silcox has participated – with great dedication and success– in rehabilitation for his drug addiction. He enrolled himself in New Bridge shortly after his arrest and dedicated himself to his recovery. He completed the program, after both residential and out-patient treatment, and graduated on November 13, 2020. Attached is a letter from New Bridge. The Court is well aware of the quality of the New Bridge program, and should credit Silcox accordingly for his successful participation, and his remaining sober ever since.

Silcox's deep and meaningful post-conviction conduct, including most importantly his successful treatment, are recognized as factors pointing to probation. Several federal courts have recognized the importance of post-conviction rehabilitation and conduct. See, e.g. *United States v. Shoffner* (2019) 942 Fed.3d818. "There is no question that consideration of post-conviction rehabilitation is permissible." *Id.*, 942 Fed.3d. at p. 823, citing, *Pepper v. United States* (2011) 562 U.S. 476, 490. Silcox has been truly exemplary since even his arrest. He participated in treatment, has maintained his military service, dealt sensibly with the Florida Bar, and has found gainful employment.

### j. Silcox's has retained the ability to be reinstated by the Florida Bar:

Silcox is a licensed attorney, on revoked status, with the state of Florida. He received his J.D. from Saint Thomas University in 2016 and passed the Florida bar exam in 2018. Most important, Silcox *has not been disbarred* as a result of this offense. Rather, he received a "Disciplinary Revocation" of his attorney's license, which unlike disbarment, will allow him to reapply for reinstatement after five years. His early and frank admission of responsibility, and most important, his involvement in rehabilitation, led to his favorable result from the Florida Bar. Attached are the administrative findings.

### k. Silcox is currently employed in a treatment facility.

Silcox has secured that will continue when he formally is out of the Coast Guard. He works at Florida Center for Recovery, Inc. as a Behavioral Health Technician. His basic duties are to guide and assist patients in recovery from substance abuse and addiction. This work is satisfying and fulfilling for him and allows him to share his insights and success in his on-going recovery with others going through the same struggles. He very much would appreciate not having this work interrupted by a sentence of incarceration. It should be clear to the Court that Silcox remaining free of incarceration, on probation, and helping others through his work, is a benefit to many people beside himself and his family.

### Conclusion

Because James Silcox took early and meaningful responsibility, because he is remorseful and is diligently working to better himself, because the amounts of the Schedule IV Tramadol were relatively low, and because he is currently employed and is continuing his successful rehabilitation, the Court should follow the recommendation and grant him probation.

Date: May 21, 2021                                                      //s//

9

Exhibit: Silcox's Military Medal Career and History

U.S. Department of
Homeland Security

United States
Coast Guard

127 Antigua Dr.
Cocoa Beach, FL 32931
Phone: 305-731-7634
Email: Silcoxheyward@gmail.com

1650

# MEMORANDUM

3/3/2021

From:   J.H. Silcox, 1116335
        CDR, USCG, Ret.

Reply to silcoxheyward@gmail.com
Attn of:

To:     CG PSC-PSC-ma

Subj:   MEMO ISO OF LEDET 405 COMBAT ACTION RIBBON

Ref:    CG Military Medals and Awards Manual, COMDTINST M1650.25E

1. <u>Background</u>: Enclosure (1) is a memo previously approved by LANT-1, submitted by current TALCET South CO, CDR Frank Florio, in September 2020. This memo was iso MK3 Angel Vazquez, a former LEDET 405 member, receiving the Combat Action Ribbon for operations conducted in 2004 and 2005 iso Operation IRAQI FREEDOM (OIF). It is my understanding that PSC kicked this package back, asking that I – the Officer in Charge at the time - provide a statement on behalf of the entire 405 Team, as we take a holistic approach to getting all 405 members recognized with the Combat Action Ribbon.

2. <u>Purpose</u>: I served as the Officer in Charge of LEDET 405, TACLET South, from June 2002 to May 2005. The purpose of this memo is to function as an attestation and affirmation that TACLET South LEDET 405 deployed to the Northern Arabian Gulf iso OIF in 2004, and in doing so participated in military operations that retroactively qualify the members of LEDET 405 for the Combat Action Ribbon.

3. <u>Authorized Operations</u>: Operation Iraqi Freedom – 20 March 2003 to 31 December 2011. Personnel who serve in clandestine or special operations, who by the nature of their mission, are restricted in their ability to return fire, and who are operating in conditions where the risk of enemy fire was great and expected to be encountered, may be eligible for the Coast Guard Combat Action Ribbon.

4. <u>Narrative</u>: LEDET 405 deployed to the Persian Gulf region in support of OIF from November 2004 to March 2005. 405 was originally assigned to USS FIREBOLT (PC-10), providing perimeter and infrastructure protection from constant imminent threats of terrorist attacks to Oil Platforms ABBOT and KAAOTT; we had just lost a shipmate on another team who was assigned to FIREBOLT a few months before we took over, as his team intercepted a suicide bomber boat that detonated near KAAOT.

5. <u>Summary of Action</u>: From January to February 2005, 405 was redeployed and chopped to TACON of USS HARPERS FERRY (LSD-49), where it staged and was tasked with integrating with U.S. Navy SEAL Team EIGHT's Surface Warfare Combatant Crew (SWCC) in conducting nightly covert surge anti-terrorism operations. It is these operations that qualify LEDET 405 for the Combat Action Ribbon.

a. For that period, the joint LEDET 405/SEAL Team EIGHT team conducted **clandestine operations** to include unannounced nighttime boardings and RECON in both Khor Abdullah (KAA) and Shatt al-Arab (SAA) rivers, which separate Kuwait from Iraq, and Iraq from Iran, respectively.

1) In March 2003, British forces occupied the strategically critical port city of Basra on the Iraqi side of the volatile SAA. At the time of our deployment and this SOA, Coalition surface asset patrols into the SAA were suspended due to recent increased tensions and pot-shots from Iranian SAA shore-based weapons at patrolling ships (earlier that year a USN Patrol Coastal had been fired at, and British Marines had been kidnapped while operating small craft in the SAA).

2) In January and early February 2005, 405 operated in conditions where **enemy fire had previously been a matter of routine, and the risk of enemy fire was imminent and expected,** as it operated into the SAA river as far north as the Iraqi city of Basra, only yards across the SAA river from Iran. Due to the nature of the mission, members would have been **unable to return fire.** On one particular night, our 11-meter RHIB broke down and we were adrift in the SAA. For two or three hours we were extremely exposed and vulnerable, as we had no means of propulsion.

b. Also during this period, 405 and Team EIGHT deployed out of Camp Patriot (Kuwait Navy Base), departing for nightly covert missions to the SAA and KAA, often with overhead protection from U.S. Navy and Coalition Forces rotor wing aircraft. We would depart at sunset, operate at night, and return before sunrise.

6. Details of these operations were not included in my unclassified deployment AAR as a matter of policy under Naval Central Command (NAVCENT). I have myriad photos and video footage evidencing the above narrative.

7. The members of LEDET 405 during this action:
   a. LT James Silcox
   b. OS1 Kevin Stann
   c. BM2 Bill (William) Dennis
   d. BM3 Cleven Brown
   e. MK3 Angel Vazquez
   f. MK3 Matthew Jones
   g. BM3 Alex Verdecia
   h. MK3 Travis Williams

8. I am grateful for your time and any guidance in recognizing my 405 teammates.

Subj: MEMO ISO OF LEDET 405 COMBAT ACTION RIBBON

1650

9. Contact Info:

    Heyward Silcox
    305-731-7634
    silcoxheyward@gmail.com.
    Florida Bar No. 1006827

#

Enclosure:   (1) CDR Frank Florio memo 1650 to PSC dtd 23 Sep 2020

Copy: TACLET South

3

# Commander J. Heyward Silcox

Commander Heyward Silcox is a native of Cocoa Beach, FL and a graduate of the United States Coast Guard Academy where he earned a Bachelor of Science degree, majoring in Public Policy and International Relations.

His first assignment was onboard USCGC HARRIET LANE, a 270-ft medium endurance Coast Guard cutter homeported in Portsmouth, VA. While onboard from 2000 to 2002 he served as Command and Control Officer and Law Enforcement Officer, seizing over 3,000 lbs of marijuana and cocaine, and repatriating over 500 Cuban and Haitian migrants.

From 2002 to 2005, Commander Silcox served as Officer in Charge LEDET 405 at Tactical Law Enforcement Team South, where he deployed with numerous U.S., Dutch, Belgian, British and Bahraini warships and seized over 10,000 lbs of cocaine in the Eastern Pacific Ocean and Caribbean Sea. He also led over 40 non-compliant boardings in support of Military Interdiction Operations in the Persian Gulf.

From 2005 – 2007 Commander Silcox served as Operations Officer onboard USCGC BEAR, where he was responsible for all operational planning and the execution of diverse missions, including an historic deployment to Africa, and the seizure of 1,800 lbs of cocaine leading to the convictions of five high-ranking members of the responsible cartel.

In June 2007 he took command of USCGC DRUMMOND SOUTH, home ported in Key West, FL. In that year Commander Silcox and his crew seized 24 Go-Fasts, arrested over 40 suspected smugglers, and safely rescued over 200 migrants at sea.

From April 2009 – April 2010, Commander Silcox served as the Coast Guard Liaison Officer to Destroyer Squadron 50 under Patrol Forces Southwest Asia in the Kingdom of Bahrain during Operations IRAQI FREEDOM and ENDURING FREEDOM, where he managed the readiness and employment of five Navy Patrol Craft and six Coast Guard Patrol Boats throughout the region.

From June 2010 – May 2012, he served as the executive officer aboard USCGC VALIANT in Miami Beach, FL, where he supervised the training, readiness, of her 90 crewmembers, and materiel condition of the 45-year-old ship. His tour was highlighted by the rescue of over 400 migrants at sea, seizure of 2000 pounds of cocaine, and leading the crew to the highest ever score during the notoriously grueling Small Boat Standardization Inspection as the first ship to earn the Kimball Award.

From June 2012 – August 2016, He served as Chief, Coast Guard District Seven Force Readiness, where he was Responsible for the management, training, and operational readiness of all Station Boat Forces, Aids to Navigation Assets, and Patrol Boat Forces throughout South Carolina, Georgia, Florida, Puerto Rico, and the Caribbean. During this time, he earned his law degree on his own from St. Thomas School of Law in Miami, graduating Cum Laude and subsequently earning his Florida Bar License.

From September 2016 – July 2020, he served as Chief, Operational Planning, Coast Guard District Eleven, were he oversaw operational planning and global apportionment of Coast Guard assets from northern California to south America. He also served as a Counter Drug Duty Officer, coordinating live maritime counter drug operations from south America to northern California, and facilitate legal analysis and recommendations to the District Commander for final approval of certain law enforcement and case prosecution actions, accounting for the seizure of over 22 metric tons of cocaine.

His personal awards include the Coast Guard Meritorious Service Medal, four Coast Guard Commendation Medals, three Coast Guard Achievement Medals, the Iraqi Campaign Medal, Armed Forces Expeditionary Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, three Special Operations Service Ribbons, and the Sea Service Ribbon with three bronze stars.

Commander Silcox and his wife Emma, also a U.S. Coast Guard officer, are proud parents of daughters Kylie (16), Sawyer (7), Landyn (5), and son, Elliott (12).

## Identification

| Name: | James Silcox | | Employee ID: | 1116335 / 0 |
|---|---|---|---|---|

## Current Employment Information

| Company: | ACG | AO Code: | PO2B |
|---|---|---|---|
| Rank: | CDR | Component: | |
| Reg Region/Empl Cls: | AD/AD | Job Code: | Commander |
| Current Location: | CGD ELEVEN ALAMEDA CA | Country: | USA |

## Addresses

| Home Address: | 127 Antigua Drive<br>Cocoa Beach FL 32931 | Effective As Of: | 2020-06-18 |
|---|---|---|---|
| Home of Record Address: | PORTSMOUTH VA | Effective As Of: | 2002-02-27 |
| Mailing Address: | 127 Antigua Dr<br>Cocoa Beach FL 32931 | Effective As Of: | 2020-06-18 |

## Phone Numbers

| Business Phone: | 510/437-5370 |
|---|---|
| Home Phone: | 510/263-9780 |

## Email Addresses

| Business Email: | james.h.silcox@uscg.mil |
|---|---|
| Home Email: | silcoxheyward@gmail.com |

## Employee Information

| Birth Location: | | Date of Birth: | 1977-12-02 |
|---|---|---|---|
| Country: | USA | Sex: | M |
| Marital Status: | Married | | |
| COLO Flag: | Y | | |
| Dependents Flag: | Yes | | |

## Ethnicity

| Ethnic Group/Category: | Ethnic Category - Not Hispanic or Latino |
|---|---|
| Ethnic Group/Category: | White |

## Security Clearance

| Agency: | OPM | SCI Eligible: | |
|---|---|---|---|
| Investigate Type: | SSBI-PR | Investigate Date: | 2019-04-05 |
| Interim: | | Interim Date: | |
| Clearance: | R | Clearance Granted: | 1902-01-01 |
| Call SECTEAM: | Y | | |
| Agency Granting Clearance: | | Adjudication Status: | |
| Adjudication Date: | | SF312 Date: | 2002-10-08 |

## Initial Career Information

| Initial Source: | Academy graduate, USCGA | Signal Nbr: | 737 |
|---|---|---|---|
| Officer Source: | Graduate USCG Academy | Year Group: | 2000 |

## Career Summary

| Date | Position | Department | EC | Job | Grd | Location | Action |
|---|---|---|---|---|---|---|---|
| 2020-05-17 | 00025025/OPS & OVERSIGHT | 008210/D11 PLNG & FORCE RDNS DIV (DX) | AD | CDR | O5 | ALAMEDA, CA | PAY/S11 |

Exhibit: Captain Burg Character Reference

Judge Tigar,

I write this in the hope that it will allow for some consideration regarding the sentencing of James (Heyward) Silcox. I have been personally and professionally acquainted with Heyward for many years before this unfortunate set of circumstances that has led him here. Before addiction, Heyward was a leader, a hard worker, and a patriot with the highest service reputation. There is no doubt that he will return to that now that he has beaten addiction and learned how to deal with his pain issues. I was his direct military supervisor during the time of addiction and his life spiraling out of control. Even in that darkest of times, Heyward still provided service to the nation. This included revamping a metrics system to make better informed budget decisions. There can be no doubt that Heyward will return to being a productive member of society and even help to improve the community that he lives in.

When Heyward called me to express his remorse over what happened, he was very honest and frank about how this started legally with doctor after doctor prescribing medication after his ankle injury. Though Heyward began to know that what he was doing was wrong, there is a sense of helplessness that comes from being in the military. If a service member asks for help with drug addiction, you will be immediately and disgracefully fired and left without employment and healthcare for your family. During my 28 years of service, I saw this play out with numerous people who needed help but knew that they could not ask for it. As his supervisor, I regret not seeing some of the signs and Heyward's changing behavior. I made a bad assumption that the behavior was caused by his family stress and the stress of both spouses being military members. I should have asked more questions.

I would also ask the court to consider the very public shaming via press releases and reduction in rank that Heyward has experienced as punishment for this exact crime that were administered by the military outside of judicial proceedings. Effectively the military has fined Heyward $1,000 a month for the rest of his life. There are very few jobs in this world that would do press releases and take profoundly serious administrative action in the middle of a court proceeding. The military often does this thinking only about preserving the reputation of the organization and the need to preserve service discipline even if it undermines a court proceeding.

I am confident in the abilities of James (Heyward) Silcox and I am confident that he will recover fully and strongly from this situation. I request that my assessment of his character be considered and hopefully the information that I have provided will be used to provide a fair proceeding when compared to people who are not in military service. Heyward took risks, endured family separation and long work hours to serve this great nation for 20 years. I do not believe that this misstep is consistent with his character and he will move forward to great future successes.

Please do not hesitated to contact me at 360-477-0888 if you need any further information.

Respectfully,

Captain G. A. Burg, USCG (ret)

Exhibit: VA Disability Rating and Classification



**DEPARTMENT OF VETERANS AFFAIRS**
810 Vermont Ave NW
Washington, D.C. 20420

March 05, 2021

James H Silcox III
127 Antigua Dr
Cocoa Beach, FL 32931

In Reply Refer to:
xxx-xx-9797
27/eBenefits

Dear Mr. Silcox:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

## Personal Claim Information

Your VA claim number is: xxx-xx-9797

You are the Veteran.

## Military Information

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Coast Guard | Honorable | May 17, 2000 | August 31, 2020 |

(There may be additional periods of service not listed above.)

## VA Benefit Information

| | |
|---|---|
| You have one or more service-connected disabilities: | Yes |
| Your combined service-connected evaluation is: | 100% |
| Your current monthly award amount is: | $3711.83 |
| The effective date of the last change to your current award was: | March 01, 2021 |
| You are considered to be totally and permanently disabled due solely to your service-connected disabilities: | Yes |
| The effective date of when you became totally and permanently disabled due to your service-connected disabilities: | September 01, 2020 |

You should contact your state or local office of Veterans' affairs for information on any tax, license, or fee-related benefits for which you may be eligible. State offices of Veterans' affairs are available at http://www.va.gov/statedva.htm.

## How You Can Contact Us

- If you need general information about benefits and eligibility, please visit us at https://www.ebenefits.va.gov or http://www.va.gov.

- Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 1-800-829-4833.

- Ask a question on the Internet at https://iris.custhelp.va.gov.

Sincerely,

Cheryl J Rawls
Assistant Deputy Under Secretary for Field Operations
Office of Outreach and Stakeholder Engagement

 

A Service of the Department
of Veterans Affairs and the
Department of Defense

A Service of the Department
of Veterans Affairs and the
Department of Defense

Dashboard

## Main Menu

Apply    Manage    Learn    National Resource Directory    Employment Center    Contact

eBenefits is moving features and capabilities to VA.gov. If you access any features on eBer
will be redirected to https://www.va.gov

Some regional offices have reopened. Please visit our Regional Offices website at
https://www.benefits.va.gov/benefits/offices.asp for updated office information or call 800-8
questions or concerns.

For feature and outage events, refer to the Outage Calendar link at the bottom of the page.

To ensure your security and privacy, when using a shared or public computer, make sure yι
eBenefits and then close all browser windows when finished accessing the site.

- Dashboard
  - My Profile
    - Personal Information
    - Representative
    - Disabilities
    - Dependents
    - My Documents
  - My Claims & Appeals
    - Work in Process
    - Historical Claims
    - Historical Appeals
  - My Benefits & Payments
    - Benefits
    - Payment History

# Disabilities

100%

### Total Combined Disability

You have a 100% final degree of disability.
This percentage determines the amount of
benefit pay you will receive.

How is this calculated

**Add Disa**

Submit a
disabilitie
your milit

Apply No

100%

### Total Combined Disability

You have a 100% final degree of disability. This percentage determines the amount c

How is this calculated

### Add Disabilities

Submit a claim to make any updates to the

- Messages
- Account Activity

Submit a claim to make any updates to the disabilities that you believe are related to your military service.

Apply Now

# Rated Disabilities

Table of Rated Disabilities

| Disability | Rating | Decision | Related To | Effecti Date |
|---|---|---|---|---|
| right hand strain s/p fracture and surgery (painful motion of the thumb, index finger, and long finger) | 10% | Service Connected | | 09/01/ |
| right foot plantar calcaneal spur (claimed as contusion 4th and 5th metatarsal, right foot) | 0% | Service Connected | | 09/01/ |
| lumbosacral strain with intervertebral disc syndrome (claimed as lower back pain) (also claimed as SI dysfunction) | 20% | Service Connected | | 09/01/ |
| left hip condition | | Deferred | | |
| left eye epiretinal membrane | 0% | Service Connected | | 09/01/ |
| right hip condition | | Deferred | | |
| right hand strain s/p fracture and surgery (painful motion of the little finger) | 0% | Service Connected | | 09/01/ |
| eosinophilic esophagitis disease | 10% | Service Connected | | 09/01/ |
| dental condition | | Deferred | | |
| radiculopathy, right lower extremity (sciatic nerve) (also claimed as piriformis syndrome, right lower extremity) | 10% | Service Connected | | 09/01/ |
| scars, right lower extremity (ankle) | 0% | Service Connected | | 09/01/ |
| post-traumatic stress disorder with opioid use disorder | 50% | Service Connected | PTSD - Non-Combat | 09/01/ |
| scars, right upper extremity (hand) | 0% | Service Connected | | 09/01/ |
| meniscal tear and torn medial collateral ligament, left knee | 10% | Service Connected | | 09/01/ |

| rosacea | 0% | Service Connected | 09/01/ |
| left lateral collateral ligament strain | 10% | Service Connected | 09/01/ |
| insomnia | | Deferred | |
| left shoulder strain s/p surgery with shoulder impingement syndrome | 20% | Service Connected | 09/01/ |
| scars, left upper extremity (shoulder) | 0% | Service Connected | 09/01/ |
| cervical strain with indeterminate age fracture of C6 spinous process with disc space narrowing C6-7) | 20% | Service Connected | 09/01/ |
| left knee instability | 10% | Service Connected | 09/01/ |
| left medial epicondylitis (limitation of pronation) (claimed as left tennis elbow) | 20% | Service Connected | 09/01/ |
| color blindness | | Deferred | |
| left medial epicondylitis (limitation of flexion)(claimed as left tennis elbow) | 20% | Service Connected | 09/01/ |
| right ankle closed fracture distal fibula with achilles tendonitis s/p surgery | 20% | Service Connected | 09/01/ |
| right hand strain s/p fracture and surgery (painful motion of the ring finger) | 0% | Service Connected | 09/01/ |

# Pending Disabilities

Table of Pending Disabilities

| Disability | Submitted | Type | Actions |
|---|---|---|---|
| Right Shoulder Severe Arthropathy | 03/23/2021 | NEW | View Pending Cl |
| Leg Condition Right | 02/15/2021 | NEW | View Pending Cl |
| Hip Condition Bilateral | 02/15/2021 | NEW | View Pending Cl |
| Right Ankle Closed Fracture Distal Fibula With Achilles Tendonitis S/p Surgery | 02/14/2021 | INC | View Pending Cl |
| Musculoskeletal - Mid/lower Back (thoracolumbar Spine) | 02/14/2021 | INC | View Pending Cl |
| Lower Right Leg - Loss Of Use | 01/18/2021 | NEW | View Pending Cl |

| | | | |
|---|---|---|---|
| Dependent Child - Sawyer | 09/09/2020 | NEW | View Pending Cl |
| Dependent Child - Elliot | 09/09/2020 | NEW | View Pending Cl |
| Dependent Child - Landyn | 09/09/2020 | NEW | View Pending Cl |
| Lower Back Pain | 09/09/2020 | NEW | View Pending Cl |
| Dependent Spouse - Emma | 09/09/2020 | NEW | View Pending Cl |
| Dependent Child - Kylie | 09/09/2020 | NEW | View Pending Cl |
| Cervicalgia (neck Pain) | 09/09/2020 | NEW | View Pending Cl |
| Tennis Elbow - Left | 09/09/2020 | NEW | View Pending Cl |
| Contusion 4th And 5th Metatarsal - Right Foot | 09/09/2020 | NEW | View Pending Cl |
| Ankle Sprain - Left | 09/09/2020 | NEW | View Pending Cl |
| Piviformis Syndrome - Right | 09/09/2020 | NEW | View Pending Cl |
| Fracture 5th Metacarpal - Right Hand | 09/09/2020 | NEW | View Pending Cl |
| Shoulder Impingemnt Left (tendonitis Rotator Cuff) | 09/09/2020 | NEW | View Pending Cl |
| Si Dysfunction | 09/09/2020 | NEW | View Pending Cl |
| Color Blindness | 09/09/2020 | NEW | View Pending Cl |
| Right Ankle Pain (with S/p Surgery) X3 Surgeries | 09/09/2020 | NEW | View Pending Cl |
| Closed Fracture Distal Fibula Right Ankle | 09/09/2020 | NEW | View Pending Cl |
| Insomina | 09/09/2020 | NEW | View Pending Cl |
| S/p Ankle Surgery - Right X3 | 09/09/2020 | NEW | View Pending Cl |
| Achilles Tendonitis - Right W/s/p Surgery | 09/09/2020 | NEW | View Pending Cl |
| Knee Pain - Left | 09/09/2020 | NEW | View Pending Cl |
| Ptsd | 09/09/2020 | NEW | View Pending Cl |
| Dental Implant Replacement With Gum Grafts - Sensitive | 09/09/2020 | NEW | View Pending Cl |
| Eosinophilic Esophogitis Disease | 09/09/2020 | NEW | View Pending Cl |
| Left Shoulder Pain With S/p Surgery With Scars | 09/09/2020 | NEW | View Pending Cl |
| Rosacea | 09/09/2020 | NEW | View Pending Cl |

Exhibit: Florida Bar Revocation, Short of Disbarment

# The Florida Bar

651 E Jefferson Street
Tallahassee, FL 32399-2300

Joshua E. Doyle
Executive Director

850/561-5600
www.floridabar.org

May 10, 2021

**VIA US Mail and E-Mail to silcoxheyward@gmail.com**

Mr. J. Heyward Silcox, III
22 Tulip Lane, Apartment 307
Cocoa Beach, FL 32931-3133

Re:    In Re: Petition for Disciplinary Revocation of J. Heyward Silcox, III;
        Supreme Court Case No.: SC21-290; The Florida Bar File No.: 2021-30,566(18B)NDR

Dear Mr. Silcox:

By order dated May 6, 2021, the Supreme Court of Florida accepted your petition for disciplinary revocation with leave to reapply after five years, effective June 7, 2021. The court's order also assessed costs in the amount of $1,250.00. Your costs are due in this office no later than June 7, 2021. A Failure to Pay Notice providing important information relating to cost assessments is enclosed. If you are interested in being on a payment plan, and you qualify under the Delinquent Costs paragraph in the attached Failure to Pay Notice, you need to contact our office immediately.

You agreed to reimburse the Client Security Fund (CSF) for any and all funds CSF has paid or may pay out for claims resulting from your misconduct.

You agreed to submit to a complete audit of any trust account(s) and any other account(s) in which you have placed client funds, if requested to do so by The Florida Bar.

You agreed to submit a sworn financial affidavit to The Florida Bar attesting to your current personal and professional financial circumstances on a form to be provided by The Florida Bar within 30 days, if requested.

You further agreed to maintain a current mailing address with The Florida Bar for a period of 5 years after the disciplinary revocation becomes final, to wit: May 6, 2026. Further, you shall keep the bar advised as to the physical address of your home and/or business in the event you should utilize a post office box or other type of mail drop service during the 5-year period after the disciplinary revocation becomes final, to wit: May 6, 2026.

Mr. J. Heyward Silcox, III
May 10, 2021
Page 2

You must follow the provisions of Rule 3-5.1(h). A copy of the order must be provided to clients, opposing counsel, and certain courts, and you must provide an affidavit to us verifying that this has been done. A form affidavit is enclosed. Please note, providing a copy of the order to the clerk's office does not satisfy this rule. You must provide a copy of the order to the presiding judge. The executed affidavit must be provided to this office within 30 days of the court order **to wit**: June 7, 2021. If you had no clients or pending matters at the time the order was served in this case, the affidavit should so state. Should you accept employment with a Florida lawyer or law firm, additional requirements apply. Please see Rule 3-6.1 in this respect. In order to avoid the appearance of being a lawyer in good standing, you must eliminate all indicia of attorney status (social media, telephone listings, stationery, checks, business cards, office signs, etc.).

Melissa Mara, Headquarters Paralegal, will be your contact person at The Florida Bar for issues relating to compliance with the court's order. Ms. Mara may be contacted via email at mmara@floridabar.org should there be any questions regarding this matter.

Sincerely,

Lisa Chason

Lisa Chason, Compliance Coordinator
Lawyer Regulation Headquarters

Enclosures—Failure to Pay Notice, 3-5.1(h) Affidavit

Exhibit: New Bridge Graduation Letter



Chief Executive Officer
Kosta Markakis

Board of Directors
William Segesta, Esq.,
Chairperson
Eric Greenleaf, PhD,
Vice-Chairperson
Mildred Crear, RN
Secretary/Treasurer
Stephen V. Brooks
Frank Staggers, Jr., MD
Neil Dickman, PhD
Johnny E. Johns
Kosta Markakis

Business Office
2323 Hearst Avenue
Berkeley, CA 94709
Tel 510.526.6200
Fax 510.526.1507

Adult Programs
1816 & 1820 Scenic Avenue
Berkeley, CA 94709
Tel 800.785.2400
Tel 510.548.7270
Fax 510.548.1060

ASPIRE School Program
Tel 510.558.1990
Fax 510.559.3558

November 18, 2020

To Whom It May Concern,

This letter is to verify that James Heyward Silcox DOB: 12/02/1977, successfully completed New Bridge Foundation's chemical dependency treatment program. He entered the residential program on 10/03/2019 and completed outpatient treatment on 03/06/2020. Mr. Silcox subsequently attended New Bridge Foundation weekly aftercare groups from 03/06/2020 through 11/13/2020 and successfully completed the aftercare program in an acknowledgment ceremony on 11/13/2020.

New Bridge Foundation is licensed and certified by the State of California Department of Health Care Services, Substance Use Disorder Services and has the highest accreditation from the Commission for the Accreditation of Rehabilitation Facilities (CARF). As Alameda County's oldest state licensed drug and alcohol treatment program, New Bridge Foundation is recognized as a model program for effective treatment.

Individualized treatment plans are developed with the understanding that chemical dependency involves psychological, social and physical factors. Treatment includes: individual therapy; group therapy; family issues; identifying high risk relapse triggers and coping strategies; outside support; 12-Step concepts and comprehensive discharge planning.

If there are any further questions, please feel free to contact me at 510-548-7270.

Sincerely,

Brenna McGee, MA AMFT

Associate Marriage and Family Therapist #116952
Supervised by Shareen Leland, LMFT
Program Director